HON. BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR21-5253 BHS |
| Plaintiff, | DEFENSE SENTENCING MEMORANDUM |
| v. | |
| JOSHUA CARL HARROD, | **Hrg: January 8, 2024 at 11:00 a.m.** |
| Defendant. | |

## I. SUMMARY

Joshua Harrod asks the Court to impose the parties' agreed sentence of ten years followed by a lifetime of supervised release. This is a just recommendation that reflects compromises made by both sides and a shared desire to avoid a trial that would further traumatize the victim. The parties came to this agreement after more than two years of investigation, both by the government and defense, where new facts were learned that shed light on the original allegations. By making this agreed recommendation, the parties avoided the need to have a more drawn out and contentious sentencing hearing than would otherwise be the case. This is not to say that the sentencing is going to be easy for anyone, most of all the victim and her family. But Mr. Harrod has taken responsibility for his crimes and done his part to spare the victim and her family from enduring additional trauma. The Court should follow the parties' joint recommendation.

DEFENSE SENTENCING MEMORANDUM
(*United States v. Harrod*, CR21-5253 BHS) - 1

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

## II. MR. HARROD'S BACKGROUND SUPPORTS THE AGREED SENTENCE RECOMMENDATION.

A wealth of mitigating information supports the parties' agreed recommendation. First, Mr. Harrod endured a childhood marked by verbal and physical abuse, as well as neglect.[1] His father was mostly absent; his mother was mentally ill, and simply not equipped to raise children: she would sometimes wake her children up in the middle of night just to force them to clean the house.[2] Mr. Harrod began working at a young age so that he could escape his mother's abuse.

He subsequently entered the military, which became his career until the date of his arrest. He enlisted in the Air Force, from which he was Honorably Discharged. He was subsequently employed by the National Guard. He served in Turkey and Iraq.[3] Mr. Harrod now suffers from depression, anxiety, and PTSD[4], conditions that likely contributed to the offenses at hand.[5]

---

[1] PSR ¶¶ 68, 84.

[2] PSR ¶ 68.

[3] PSR ¶¶ 90, 92.

[4] PSR ¶ 79.

[5] There is a higher representation of sexual offenses among incarcerated veterans compared to incarcerated civilians. In 2019, federal veteran offenders committed sexual abuse offenses nearly three times as often as citizen offenders overall, 6.7 percent compared to 2.4 percent. United States Sentencing Commission, "Federal Offenders Who Served in the Armed Forces" at 12 (October 2021) (also noting that "[t]he most significant differences in crime type between veteran and citizen offenders . . . . were the frequencies of child pornography and sexual abuse offenses."). Half of these veteran offenders reported some history of mental health problems, with 15 percent of all sentenced veteran offenders suffering from post-traumatic stress related to their military service. *Id.* at 23.

DEFENSE SENTENCING MEMORANDUM
(*United States v. Harrod*, CR21-5253 BHS) - 2

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

Mr. Harrod reached out to his attorneys to propose settling this case to spare MV from further trauma. He understands the harm he caused his family, as reflected in his letter to the Court:

> DEAR JUDGE SETTLE
>
> THANK YOU FOR TAKING THE TIME TO READ THIS LETTER. SINCE I WAS ARRESTED IN JULY OF 2021, I HAVE HAD A LOT OF TIME TO THINK ABOUT MYSELF AND MY FAMILY AND THE HARM I HAVE CAUSED. I KNOW THE WORD SORRY, WILL NOT ACCURATELY EXPRESS MY TRUE REMORSE FOR WHAT I DID TO MY DAUGHTER. I KNOW I CAUSED IMMENSE PAIN TO HER AND SHE MAY NEVER BE ABLE TO FORGIVE ME, AND I UNDERSTAND THAT. I WAS NOT THE FATHER I WANTED TO BE AND SHOULD HAVE BEEN, TO BOTH OF MY DAUGHTERS
>
> I WANT, AND AM READY TO RECEIVE HELP FOR MY PORN ADDICTION I TRUELY WANT THIS HELP.
>
> MY HOPE IS THAT MY DAUGHTERS CAN GET THE HELP AND SUPPORT THEY NEED AS WELL, SO THAT THEY CAN BE HAPPY AND LIVE FULFILLING LIVES.

DEFENSE SENTENCING MEMORANDUM
(*United States v. Harrod*, CR21-5253 BHS) - 3

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

> I AM SORRY TO EVERYONE INVOLVED IN THIS CASE, THE TOLL IT HAS TAKEN ON EVERYONE AND ALL THE PAIN I HAVE CAUSED
>
> I WANT TO TAKE THIS TIME TO BETTER MYSELF SO THAT I CAN LEAD A PRODUCTIVE LIFE, AND WORK ON RIGHTING ALL MY WRONGS. I DO KNOW IT WILL TAKE TIME, BUT I AM DEDICATED TO THIS PROCESS
>
> THANK YOU AGAIN, I APPRECIATE YOU TAKING THE TIME TO READ THIS LETTER
>
> *[signature]*
> JOSHUA HARROD

When he is released, he hopes to obtain employment as a paralegal, as is detailed in a letter of support from Gregory Posch, someone who Mr. Harrod befriended while serving in the Air Force. Mr. Posch recalls that Mr. Harrod was always willing to help others. He now worries that about Mr. Harrod struggling with depression. Mr. Posch's letter is set forth below:

DEFENSE SENTENCING MEMORANDUM
(*United States v. Harrod*, CR21-5253 BHS) - 4

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

> Dear Your Honor,
>
> I first met Josh at Airman Leadership School while stationed at Wright Patterson Air Force Base near and around 2011 in Ohio. Josh and I became good friends while learning to become supervisors for future airman. I spent time with him both professionally and recreationally. I have known Josh for approximately 10 years and we have talked regularly over this period.
>
> Since the time I have known Josh, he has been an upstanding person and has strived to help others in any community he enters. Josh has always cared about his family and friends. Josh has always been supportive of others and has always looked to maintain his service to our country. Josh has always been willing to help people and encourage others to act with future endeavors in mind.
>
> Since talking to Josh, I have seen and heard a sense of depression and hardship after this ordeal. I have noticed an increase in depression and sadness. However, Josh still has hope and has clearly indicated his interest in the justice system as a paralegal. I hope you can keep Josh's hope alive and take leniency and compassion on him during his sentencing.
>
> If you have any questions or concerns, please feel free to contact me directly.
>
> Respectfully,
>
> By: /s/ *Gregory A. Posch*
> Posch Law Firm

Letter of Gregory A. Posch (December 28, 2023) (attached as Exhibit A).

In light of all this mitigation and for the reasons set forth in the government's sentencing memorandum, the parties' agreed sentencing recommendation provides sufficient but not greater than necessary punishment for Mr. Harrod. The ten-year agreed recommendation is also consistent with the punishment imposed in similar cases. *See, e.g., United States v. Jackson*, CR21-5287RJB, dkts. 22, 34 (eight-year sentence imposed for two counts of abusive sexual contact involving two minor victims; forensic interviews of the children reported multiple incidents of alleged abuse

DEFENSE SENTENCING MEMORANDUM
(*United States v. Harrod*, CR21-5253 BHS) - 5

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

across a number of jurisdictions; if proven, one of the allegations would have supported a charge carrying a mandatory minimum sentence of thirty years).

### III. THIS WAS A CHALLENGING CASE TO RESOLVE, BUT THE PARTIES DID SO WITH A FAIR AND AGREED SENTENCE RECOMMENDATION. THE USPO'S RECOMMENDATION IS CONFUSING BECAUSE IT ENDORSES BOTH THE AGREED 10-YEAR RECOMMENDATION AND AN UNWARRANTED 15-YEAR RECOMMENDATION. THE LONGER RECOMMENDATION CANNOT BE JUSTIFIED.

The USPO's Recommendation is ambiguous because it endorses two outcomes: (A) the 120-month sentence that the parties recommend, USPO Rec. at 2[6], and (B) a sentence that is fifty-percent greater than what the parties recommend, USPO Rec. at 1, 5 (recommending a 180-month sentence). The defense could not reach the probation officer to clear up this ambiguity. If the USPO is not endorsing the parties' agreement, the defense offers the following rebuttal to a proposed 180-month sentence.

As noted in the defense objections to the description of the offense conduct,[7] the parties worked for more than two years to arrive at an appropriate resolution of this case. Reaching a resolution in emotionally charged cases such as this is always difficult. This case was more difficult than most, because, as noted in the defense's Motion to Compel a Psychological Examination of MV[8], there were serious issues related to

---

[6] "It is respectfully recommended that the sentence be imposed as follows:

> As to Count 1, the defendant shall be committed to the custody of the United States Bureau of Prisons for a term of 120 months. As to Count 2, the defendant shall be committed to the custody of United States Bureau of Prisons for a term of 12 months, to run concurrently. Upon release from imprisonment, the defendant shall serve a life term of supervised release…."

USPO Rec. at 2.

[7] Addendum to PSR.

[8] Motion to Compel Psychological Examination, dkt. 55 (filed under seal).

DEFENSE SENTENCING MEMORANDUM
(*United States v. Harrod*, CR21-5253 BHS) - 6

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

MV's ability to accurately report past events. That motion was filed under seal, and out of respect for MV, those concerns will not be repeated here. But as set forth in the Motion, it was apparent to the defense that MV made several statements "beyond the realm of those human conditions that ordinary experience would confirm as normal" and that a psychological examination was warranted as a result.[9]

There were several inconsistencies in MV's allegations as well, which again will not be reiterated here, but are available in the sealed record.[10] The defense also detailed instances where MV appeared to have been coached[11] and biased by information that is demonstrably false.[12] Among the disputed claims included one that Mr. Harrod bruised MV. The uncorroborated nature of this claim is noted in a sealed filing,[13] which the defense provided to the USPO during the PSR process.[14] Other than noting the defense's objections to the draft PSR's description of the offense conduct, however, neither the PSR nor the USPO's recommendation acknowledges the reliability questions that supported the defense's motion to compel a psychological examination. Worse, the USPO's recommendation relies on the uncorroborated bruise claim in

---

[9] *See* Motion to Compel Psychological Examination at 6 (quoting *Gov't of the Virgin Islands v. Leonard A.*, 922 F.2d 1141, 1143 (3d Cir. 1991)), dkt. 55.

[10] *See, e.g.*, dkt. 55-01, Exhibit A-7 to Exhibit A-14.

[11] Dkt. 55 at 4, lines 3-4 ("My mom said it's important that you know that he threatened to kill people.").

[12] *Id.* at lines 5-6 ("[My mom] got a guardian ad litem that said he was crazy . . . .").

[13] Dkt. 55-01, Exhibit A-12.

[14] Addendum to PSR at 1.

DEFENSE SENTENCING MEMORANDUM
(*United States v. Harrod*, CR21-5253 BHS) - 7

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

support of its recommended 180-month sentence.[15] The USPO relies on another disputed and improbable claim to support that 180-month recommendation, namely that sexual abuse occurred in the middle of a Walmart store.[16]

This is all problematic because – as noted in the Government's Sentencing Memorandum – litigation risk was one of the reasons that the parties settled the case with the recommendation it did.[17] If such risk could not be the basis for arriving at an appropriate resolution, cases like this could not be fairly settled. A fundamental error underpinning the USPO's 180-month recommendation is that it fails to consider this risk at all; instead, it assumes all of the unproven allegations to be true, despite credible evidence that casts doubt upon them, see dkt. 55. In this way, the USPO essentially asks that Mr. Harrod be sentenced as if the government had proven ever single allegation made in the indictment, disregarding all of the investigation that followed.

Neither party in this case will be requesting an evidentiary hearing to resolve the factual claims that go beyond those agreed to in the plea agreement. This decision protects the victim from having to be cross-examined and potentially subjected to a psychological examination.

In light of the agreed sentencing recommendation, the fact that no party has requested an evidentiary hearing, and the outstanding reliability questions related to the

---

[15] *Compare* USPO Rec. at 6 (relying on claim of bruises that were never seen by anyone) *with* Dkt. 55-01, Exhibit A-12 (forensic report noting bruises were apparently never noticed by others, including MV's mother and teachers).

[16] *Compare* USPO Rec. at 6 ("The abuse of his daughter is particularly disturbing in that it occurred not only in his home, a place where a child should feel their safest, but also in public. These brazen acts [support . . . ] a significant sentence, such as 15 years in custody. . . .") *with* dkt. 55 at 4, lines 6-8 ("Some of the claims made by [MV]. are implausible, or will be contradicted at trial by other evidence. For example, [MV]. claims that she was sexually assaulted in the middle of a Walmart store.").

[17] Gov't Sentencing Memorandum at 5, lines 10-11, dkt. 78.

DEFENSE SENTENCING MEMORANDUM
(*United States v. Harrod*, CR21-5253 BHS) - 8

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

non-agreed-to assertions, it would be inappropriate to consider those assertions to support a sentence that exceeds that recommended by the parties—but this is exactly what the USPO did to support a recommendation that *far exceeds* that agreed recommendation. If sanctioned by the Court, this approach would deprive Mr. Harrod of a fair sentencing hearing. *See United States v. Vanderwerfhorst*, 576 F.3d 929, 935–36 (9th Cir. 2009) (reliance on information lacking "some minimal indicium of reliability beyond mere allegation" offends due process) (quoting *United States v. Ibarra*, 737 F.2d 825, 827 (9th[h] Cir. 1984)).

The four trial attorneys associated with this case negotiated a resolution that was acceptable to both parties. As set forth in the Government's sentencing memorandum, the agreed resolution spared the victim from the trauma of trial – a laudable goal that Mr. Harrod also supports.[18] The government conferred with the victim and her family about the agreed resolution, and the supervising attorneys within the United States Attorney Office approved of the agreed resolution. This process was vetted, thorough, and fair.

The Court holds the ultimate power to issue what it deems a just sentence. But the great value in agreed recommendations in sex offense cases is that they provide a measure of certainty as to the likely outcome of the sentencing hearing. In this way, agreed recommendations generally lower the temperature in the courtroom. Sadly, that certainty has been disrupted by the USPO's recommendation of a sentence that is 50% greater than that jointly advocated by the parties.[19] This is unfortunate, because if the

---

[18] Gov't Sentencing Memorandum at 5, lines 10-11, dkt. 78.

[19] This truth is apparent from the fact that the defense dedicated four pages of this memorandum to rebut the USPO's unjustified recommendation. Mr. Harrod had no desire to outline the nature of the litigation risk here, out of concern for MV. Had the USPO clearly endorsed the parties 120-month recommendation, none of this would have been necessary.

DEFENSE SENTENCING MEMORANDUM
(*United States v. Harrod*, CR21-5253 BHS) - 9

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

parties are going to be able to resolve difficult cases like this one in the future, they need to have some confidence that agreed recommendations will not be undercut in this way.

There is no perfect solution to make everyone happy here, but endorsing the agreed recommendation is the best option among those available.

**IV.   MR. HARROD AGREES WITH MOST OF THE RECOMMENDED SUPERVISED RELEASE CONDITIONS BUT SUBMITS THAT TWO ARE UNWARRANTED AND THAT TWO OTHERS SHOULD BE MODIFIED.**

The defense has no quarrel with most of the suggested supervised release conditions. The defense believes, however, that four of the proposed special conditions should be modified or eliminated so that they comply with constitutional guaranties of notice and the statutory requirement that conditions not impose greater deprivations of liberty than are reasonably necessary under 18 U.S.C. § 3583(d)(2). The defense addresses these concerns with the understanding that "the government 'shoulders the burden of proving that a particular condition of supervised release involves no greater deprivation of liberty than is reasonably necessary to serve the goals of supervised release.'" *United States v. Collins*, 684 F.3d 873, 889 (9th Cir. 2012) (quoting *United States v. Weber*, 451 F.3d 552, 559 (9th Cir. 2006)).

**Proposed Special Condition 1** states that the defendant should have no "direct or indirect contact with any children under the age of 18." This restriction should be modified to include the *mens rea* requirement of "knowing contact" – otherwise Mr. Harrod could unknowingly violate this term of release by having direct or indirect contact with "a mature-looking seventeen-year-old." *See United States v. Preston*, 706 F.3d 1106, 1123 (9th Cir. 2013).

**Proposed Special Condition 2** states that the Mr. Harrod shall have no direct or indirect contact with the victim, or her family, without the approval of a probation

DEFENSE SENTENCING MEMORANDUM
(*United States v. Harrod*, CR21-5253 BHS) - 10

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

officer. The parties have stipulated to a lifetime of supervised release. Assuming the Court adopts that part of the agreed recommendation, this proposed condition would – absent approval from a probation officer – forever prevent Mr. Harrod from having contact with his children even if they at some point desired to have that contact, after they turn 18. While a reconciliation seems highly unlikely today, it may be possible someday. The defense submits that whether reconciliation should be attempted is a decision that should be vested with MV and her sister, at the point when they reach the age of majority, and not conditioned on a probation officer's approval. It is also possible that contact could be granted by a family court order at some future point. The defense therefore proposes amending this condition as follows:

"Unless authorized by a family court order, or initiated by MV or her sister after they turn 18 years old, Mr. Harrod shall have no contact with MV or MV's mother and sister, by any means, including in person, by mail, electronic means, or via third parties, without the approval of the probation officer. If any unauthorized contact occurs, the defendant shall immediately leave the area of contact and report the contact to the probation officer, within one business day."

The proposed amendment would still prevent Mr. Harrod from initiating any contact, while providing flexibility should conditions change. The defense submits that the above modification is consistent with the general rule that SR conditions be no more restrictive than necessary and with *United States v. Wolfchild*, 699 F.3d 1082 (9th Cir. 2012), which requires specific findings to impinge upon a person's due process liberty interest in maintaining intimate associations.

**Proposed Special Condition 4** states that the defendant shall abide by "other lifestyle restrictions" as defined by the defendant's therapist. The defendant objects to this phrase as being unconstitutionally vague. As such, its inclusion in a supervised release condition would constitute an impermissible delegation of authority to the

DEFENSE SENTENCING MEMORANDUM
(*United States v. Harrod*, CR21-5253 BHS) - 11

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

therapist to define the conditions of supervised release. *Cf. United States v. Loy*, 237 F.3d 251, 266 (3rd Cir. 2001) (terms having "no core meaning" subject to vagueness challenge). The defense further argues that that this condition is unnecessary, given that Mr. Harrod will be obligated to make reasonable progress in a certified sexual offender treatment program, as set forth in proposed Special Condition 10. Proposed Special Condition 4 should not be imposed.

Finally, in **Proposed Special Condition 10**, the USPO has requested that Mr. Harrod be subjected to periodic polygraph examinations at the discretion of his treatment provider. While some treatment providers value polygraph examinations, many do not, reasoning that they are counterproductive to treatment goals:

> The treatment of sex offenders requires a delicate balance. On one hand a great deal of trust is required to get the client to open up about what is going on in their psyche, on the other, the need to protect the community at large against any recurrences of the underlying behaviors. In such a setting, a blunt tool like the polygraph, with all its associated anxiety, would add further resistance to treatment, encourage non-disclosure, and negatively impact on the therapeutic alliance essential for successful and meaningful treatment. As with any other test, polygraph have a rate of false positive, that is test results that indicate deception when none exists. At most, the polygraph has been deemed to be 80% to 90% accurate, meaning that up to 1 in 5 patients submitting to the test will be found, wrongly, to be lying.

Letter of Alexander Sasha Bardey, M.D. to AFPD Samuel Jacobson (December 2, 2016) (Attached as Exhibit B).

Given the lack of consensus about the value of polygraphs in a treatment setting – as well as lack of consensus as to whether the results are reliable in any setting, *see, e.g.*, *United States v. Scheffer*, 523 U.S. 303, 309 (1998) – the Court should not impose this condition.

Even ignoring those two problems, the value of such a condition is dubitable, since a party's supervised release cannot be revoked for refusing to take a polygraph

DEFENSE SENTENCING MEMORANDUM
(*United States v. Harrod*, CR21-5253 BHS) - 12

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

examination, when that refusal is based on Fifth Amendment concerns. *United States v. Antelope*, 395 F.3d 1128, 1135, 1142 (9th Cir. 2005) (noting that otherwise a requirement to submit to a full-disclosure sexual history polygraph can place a supervisee in an unconstitutional bind: "comply and incriminate [your]self or invoke [your] right to self-incrimination and be sent to prison")[20]; *see also United States v. Von Behren*, 822 F.3d 1139 (10th Cir. 2016) (requirement that an individual on supervised release answer questions on a polygraph examination regarding prior uncharged sex crimes under penalty of revocation violates the Fifth Amendment privilege against self-incrimination). Because of this, some defense counsel deem it necessary to advise their client to invoke their right against self-incrimination and right to counsel when confronted with such an examination. At best, this condition creates a cumbersome process to navigate and produces little or no gain. At worst, the condition is counterproductive, as it erodes the trust that is necessary for successful treatment. This condition should not be imposed.

## V.   CONCLUSION

Mr. Harrod acknowledges that he has traumatized MV and obstructed the investigation. He understands the gravity of his actions and is prepared to face the serious and harsh consequences as a sex offender with a long prison sentence. Some of those consequences have already been imposed upon him, since through his actions he has likely lost his relationships with his daughters for the rest of his life. While he is not expecting sympathy on that point, the defense feels it important to acknowledge Mr. Harrod's humanity. Mr. Harrod is not a monster, although he understands that he will be viewed that way by most in the courtroom at his sentencing hearing and by many

---

[20] *Cf. United States v. Hohag*, 893 F.3d 1190 (9th Cir. 2018) (without addressing the Fifth Amendment issue, holding that requiring SORNA defendant to undergo a sex offender evaluation which may include polygraph testing as a condition of supervised release is not "overly burdensome").

DEFENSE SENTENCING MEMORANDUM
(*United States v. Harrod*, CR21-5253 BHS) - 13

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

people in the community. For the remainder of his life he will be under supervision as a sex offender and will have to register as such. But as shown by Mr. Posch's letter, Mr. Harrod is not solely defined by his criminal acts. While some may not remember it now, he had been a good father, a good husband, and a good friend to others (and still serves as the last). Mr. Harrod himself was abused as a child, and that provides some explanation for how he came to commit the enticement offense. He also served honorably in the armed forces, something that the Supreme Court has recognized as mitigating.[21] Mr. Harrod is 44 years old, has never been incarcerated before, and will now be federally monitored for the rest of his life. Due to the pandemic, the time that he has already served has been harsher that it should have been. And the time he has yet to serve will be harsher than it should be, since the BOP is plagued with staffing shortages that limit a detainee's programming opportunities. In light of all this, he asks the Court to impose the agreed-upon sentence of ten years, followed by a lifetime of supervised release. He asks the Court to recommend that he be housed at FCI Terminal Island, so he can obtain appropriate medical care and pursue paralegal training.[22]

DATED this 30th day of December 2023.

Respectfully submitted,

s/ *John R. Carpenter*
s/ *Elizabeth Sher*
Assistant Federal Public Defenders
Attorneys for Joshua Harrod

---

[21] *Porter v. McCollum*, 558 U.S. 30 (2009).

[22] PSR ¶ 73.

DEFENSE SENTENCING MEMORANDUM
(*United States v. Harrod*, CR21-5253 BHS) - 14

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710